IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| INFRASTRUCTURE SERVICE | ) | Case No. 04-12037 (PJW) |
| COMPANY, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| INFRASTRUCTURE SERVICE | ) | |
| COMPANY, LLC, | ) | |
| | ) | C.A. No. 05-579 (GMS) |
| Appellee, | ) | |
| | ) | |
| v. | ) | Adv. No. 05-51879 (PJW) |
| | ) | |
| JOHN F. FIRESTONE, HUB MANAGEMENT, | ) | |
| INC., JOHN FIRESTONE MASTER LIMITED | ) | |
| PARTNERSHIP, AND HMI GROUP, INC., | ) | |
| | ) | |
| Appellants. | ) | |

## APPELLANTS' ANSWERING BRIEF WITH RESPECT TO APPELLEE'S MOTION TO DISMISS APPEAL

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Joseph A. Malfitano (No. 4020)
Curtis J. Crowther (No. 3238)
Sean T. Greecher (No. 4484)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: (302) 571-6600

Daniel H. Slate
HUGHES HUBBARD & REED LLP
350 South Grand Avenue
Los Angeles, California 90071-3442

Attorneys for Appellants

# TABLE OF CONTENTS

Page No.

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ................................................................................. 2

ARGUMENT ......................................................................................................... 3

1.  The Order, which grants a permanent injunction, is appealable as of right, even if portions of the Order may be interlocutory.................................. 3

2.  Even if the Order did not permanently enjoin the Appellants from transferring title to the Firestone Property, the Appellants' Notice of Appeal may serve as a motion for leave to appeal. ............................................. 4

3.  Leave to appeal the Order is warranted; therefore, the Motion should be denied.. 6

   a.  The Order Involves a Controlling Question of Law. ................................. 6

   b.  There Is Substantial Ground for Disagreement With the Order. ............... 7

      i.  Notice of a Preliminary Injunction ................................. 8

      ii.  Notice of the Bankruptcy Court's Rulings on the Merits of the Complaint................................................................. 9

   c.  Resolving the Appeal Will Materially Advance the Ultimate Termination of the Litigation.................................................. 11

CONCLUSION....................................................................................................... 14

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

Anderson v. Davila,
    125 F.3d 148 (3d Cir. 1997) ................................................................ 8, 9

Arkwright-Boston Mfrs. Mutual Ins. Co. v. Aries Marine Corp.,
    932 F.2d 442 (5th Cir. 1991) ................................................................ 10

Beckley Coal Mining Co. v. United Mine Workers of Am.,
    98 B.R. 690 (D. Del. 1988) ................................................................... 6

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ........................................................................... 10

Colvin v. Nat'l Auto. Parts Ass'n,
    C.A. No. 95-1461, 1996 U.S. App.
    LEXIS 11680 (Fed. Cir. May 22, 1996) ............................................... 10

Commerce Bank v. Mountain View Village, Inc.,
    5 F.3d 34 (3d Cir. 1993) ................................................................. 6, 12

EPL, Inc. v. USA Fed. Credit Union,
    173 F.3d 1356 (11th Cir. 1999) .......................................................... 10

Garcia v. Miller,
    C.A. No. 99-0009, 1999 U.S. App.
    LEXIS 32429 (2d Cir. Dec. 10, 1999) .................................................. 10

Graham v. City of Oklahoma City,
    859 F.2d 142 (10th Cir. 1988) ............................................................ 10

Granny Goose Foods, Inc. v. Brotherhood of Teamsters,
    415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974) ............................ 8

Heller v. Vallelonga,
    C.A. No. 92-4072, 1993 U.S. App.
    LEXIS 34094 (6th Cir. Dec. 21, 1993) ................................................. 10

Home Shopping Network, Inc. v. Happy Mind, Inc.,
    C.A. No. 90-2418, 1991 U.S. App.
    LEXIS 8285 (4th Cir. May 3, 1991) ..................................................... 10

DB01:1906500.1                                                       063398.1001

Howard Johnson Int'l v. Cupola Enters., LLC,
    Case No. 03-4458, 2004 U.S. App.,
    LEXIS 26217 (3d Cir. December 15, 2004) ............................................................. 10

In re Delaware & H. R. Co.,
    129 B.R. 388 (D. Del. 1991) ................................................................................... 5

In re Gianakas,
    112 Bankr. 737 (W.D.Pa.),
    aff'd, 917 F.2d 759 (3d Cir. 1990) ........................................................................ 5

In re Marvel Entertainment Group,
    209 B.R. 832 (D. Del. 1997) ........................................................................... 5, 6, 7

Katz v. Carte Blanche Corp.,
    496 F.2d 747 (3d Cir.),
    cert. denied, 419 U.S. 885 (1974) ...................................................................... 6, 13

Lerohl v. Friends of Minnesota Sinfonia,
    322 F.3d 486 (8th Cir. 2003) ................................................................................ 10

Lomas Financial Corp. v. Northern Trust Co.,
    932 F.2d 147 (2d Cir. 1991) .................................................................................. 6

Max Daetwyler Corp. v. Meyer,
    575 F. Supp. 280 (E.D. Pa. 1983) ......................................................................... 13

Mullane v. Cent. Hanover Bank & Trust Co.,
    339 U.S. 306 (1950) ............................................................................................. 10

Oluwa v. Gomez,
    133 F.3d 1237 (9th Cir. 1998) .............................................................................. 10

Rijos v. Vizcaya (In re Rijos),
    263 B.R. 382 (B.A.P. 1st Cir. 2001) ..................................................................... 10

Simpson v. Merchs. Recovery Bureau,
    Inc., 171 F.3d 546 (7th Cir. 1999) ........................................................................ 10

Sims v. Greene,
    161 F.2d 87 (3d Cir. 1947) .................................................................................... 8

United States v. Nicolet, Inc.,
    857 F.2d 202 (3d Cir. 1988) .................................................................................. 6

University of Texas v. Camenisch,
    451 U.S. 390 (1991) .............................................................................................. 9

DB01:1906500.1                                                                                      063398.1001

## Statutes

11 U.S.C. § 362 .................................................................................................................... 12

28 U.S.C. § 1292(a) ........................................................................................................ 2, 3, 4

28 U.S.C. § 1292(b) ..................................................................................................... 2, 3, 4, 6

## Rules

Fed. R. Bankr. P. 7065 ............................................................................................................ 8

Fed. R. Bankr. P. 8001(b) ........................................................................................................ 5

Fed. R. Bankr. P. 8003(c) ........................................................................................................ 5

Fed. R. Civ. P. 65(a)(1) ........................................................................................................... 8

DB01:1906500.1                                                                                   063398.1001

## NATURE AND STAGE OF PROCEEDINGS

This matter arises as a result of the Order entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on July 7, 2005 [Adv. Docket No. 21] (the "Order")[1] following a hearing on the emergency motion for a temporary restraining order [Adv. Docket No. 3] (the "Emergency Motion"). The Emergency Motion filed by the Debtor sought to preclude John F. Firestone ("Firestone"), HUB Management, Inc. n/k/a HMI Group Inc. ("HUB"), and John Firestone Master Limited Partnership (the "Master Partnership," and together with HUB and Firestone, the "Appellants") from transferring title to certain real property owned by Firestone and HUB (the "Firestone Property") as to which appellee Infrastructure Service Company, LLC (the "Debtor") asserts the option to purchase pursuant to that certain Amended and Restated Contract of Purchase by and between Firestone and HUB and Ocean Atlantic Development, LLC, dated September 4, 2003 (the "Agreement").

By the filing of a complaint ("Complaint"), the Debtor commenced an adversary proceeding against the Appellants on June 28, 2005, alleging that the Appellants violated the automatic stay and that the transfer of the Firestone Property among the Appellants breached the Agreement. The Complaint alleged a violation of the automatic stay and breach of contract, and sought an order directing the return of title to the Firestone Property back to Firestone and HUB. The Debtor's concern was that with the transfer of title to the Firestone Property, the Debtor's rights, if any, to enforce the terms of the Agreement could be affected, even though the Firestone Property was transferred to entities owned or controlled by Firestone.

The Debtor filed the Emergency Motion seeking entry of an order temporarily restraining and preliminarily enjoining the Appellants from transferring the Firestone Property pending a

---

[1] Docket entries from the above-captioned adversary proceeding shall be referred to as "Adv. Docket No. __."

full hearing on the Complaint. A hearing regarding the Emergency Motion (the "TRO Hearing")
was held on June 30, 2005, only two days after service of the Emergency Motion.

Before the TRO Hearing, the Appellants submitted declarations from each of the
transferees of the Firestone Property. Each of the declarations confirmed that the transferees
agreed to cooperate with a transfer of the Firestone Property if it were to be determined that the
Debtor in fact had an interest under the Agreement and the seller under the Agreement is
obligated to perform. At the TRO Hearing, after legal argument (but without the introduction of
any evidence in support of the Emergency Motion) on the issues raised by the Emergency
Motion, the Bankruptcy Court denied the Debtor's request for a TRO. After the TRO Hearing,
the Debtor and the Appellants each submitted an order to the Bankruptcy Court. However, the
Court entered the Order in the form proposed by the Debtor, which makes an affirmative finding
that the transfers of title to the Firestone Property at issue in the litigation "constitute[d] clear
violations of the automatic stay" and precluded Appellants from further transferring the Firestone
Property. The instant appeal followed entry of the Bankruptcy Court's Order.

## SUMMARY OF ARGUMENT

1.      Pursuant to 28 U.S.C. § 1292(a), the Order, which grants a permanent injunction,
is appealable as of right, even if portions of the Order may be interlocutory.

2.      Alternatively, even were the Order only appealable on a discretionary basis
pursuant to 28 U.S.C. § 1292(b), this Court could, and should, consider the Notice of Appeal as a
motion for leave to appeal the Order, particularly considering the seemingly final nature of the
Order.

3.      Further, even were the Order only appealable on a discretionary basis pursuant to
28 U.S.C. § 1292(b), the Defendants submit that the Order involves a controlling question of law
upon which there is substantial ground for difference of opinion, and an immediate appeal from

2

the order may materially advance the ultimate termination of the adversary proceeding. For each

of these reasons, the Court should, within its discretion, hear the appeal pursuant to 28 U.S.C. §

1292(b).

## ARGUMENT

The Debtor seeks dismissal of the instant appeal on the grounds that the Order by the

Bankruptcy Court is not a final order subject to immediate appeal as of right. Remarkably, the

Debtor categorically ignores the statutory language of 28 U.S.C. § 1292(a), which permits appeal

of right from an order granting injunctions, and the fact that the Order, in no uncertain terms,

grants a permanent injunction. Rather, the Debtor chooses to ignore this language of the Order,

and rather focuses on the remainder of the procedurally improper rulings made by the

Bankruptcy Court to argue that the Order is interlocutory. The Debtor's motion to dismiss the

instant appeal (the "Motion"), based on its selective reading of the Order, is specious and should

not be countenanced.

**1.     The Order, which grants a permanent injunction, is appealable as of right, even if portions of the Order may be interlocutory.**

Title 28 of the United States Code, section 1292, states in pertinent part:

(a) Except as provided in subsections (c) and (d) of this section, the courts
of appeals shall have jurisdiction of appeals from:
    (1) Interlocutory orders of the district courts of the United States,
    the United States District Court for the District of the Canal Zone, the
    District Court of Guam, and the District Court of the Virgin Islands, or
    of the judges thereof, granting, continuing, modifying, refusing or
    dissolving injunctions, or refusing to dissolve or modify injunctions,
    except where a direct review may be had in the Supreme Court;
    (2) Interlocutory orders appointing receivers, or refusing orders to
    wind up receiverships or to take steps to accomplish the purposes
    thereof, such as directing sales or other disposals of property;
    (3) Interlocutory decrees of such district courts or the judges
    thereof determining the rights and liabilities of the parties to admiralty
    cases in which appeals from final decrees are allowed.
(b) When a district judge, in making in a civil action an order not
otherwise appealable under this section, shall be of the opinion that such

3

> order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(a) and (b). In its Motion, the Debtor curiously refers only to 28 U.S.C. § 1292(b) in arguing that the Order is interlocutory and therefore the right to appeal is left to the discretion of the court to which the appeal is taken. However, since 28 U.S.C. § 1292(a)(1) authorizes the taking of this appeal as of right, the Appellants submit that an analysis of 28 U.S.C. § 1292(b) is inappropriate.

Section 1292(a), on the other hand, is the statutory provision that addresses appeals of orders granting, refusing, modifying, or otherwise affecting injunctions, and provides the grounds upon which the Appellants are entitled to appeal the Order as of right.

Though the Debtor somehow fails to cite it, the Bankruptcy Court ordered that "Defendants are prohibited from transferring title to the Property until further order of this Court." Order, at ¶2. The Order enjoining the Defendants from transferring title to the Firestone Property serves as a permanent injunction, which is immediately appealable. Because the Appellants have the right to appeal this injunction, the Debtor's motion to dismiss the appeal should be denied.

**2.    Even if the Order did not permanently enjoin the Appellants from transferring title to the Firestone Property, the Appellants' Notice of Appeal may serve as a motion for leave to appeal.**

Just as the Debtor failed to address the fact that 28 U.S.C. § 1292(a) grants the Appellants the right to appeal the Order, the Debtor similarly fails to note that, even if Appellants were

required to file a motion for leave to appeal the Order, such a failure, in and of itself, does <u>not</u> mandate that "this Court lacks jurisdiction and the appeal should be dismissed." Appellee's Opening Brief, at p.10.

Though the Debtor is correct that Bankruptcy Rule 8001(b) requires a motion for leave to appeal an interlocutory order, the Debtor entirely ignores Bankruptcy Rule 8003(c), which states that "if a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed." Fed. R. Bankr. P. 8003(c).

The Debtor cites one unpublished opinion of the United States District Court for the District of New Jersey that similarly ignores Bankruptcy Rule 8003(c) . However, this Court has previously acknowledged that Bankruptcy Rule 8003(c)  authorizes the Court to consider a notice of appeal as a motion for leave to appeal. <u>In re Marvel Entertainment Group</u>, 209 B.R. 832, 837 (D. Del. 1997).

The suggestion by the Debtor that the Appellants' failure to file a motion for leave to appeal, if one were necessary at all, <u>mandates</u> a dismissal of the appeal for want of jurisdiction is contradicted by Bankruptcy Rule 8003(c) and applicable caselaw in this District, which indicates that the Court may grant leave to appeal even without the filing of a motion. <u>See</u> <u>In re Delaware & H. R. Co.</u>, 129 B.R. 388, 393 (D. Del. 1991) ("No party sought leave to appeal the bankruptcy court's January 15, 1991 order as an interlocutory order, but the Court may review an interlocutory order on its own motion if warranted."), citing Bankr. R. 8003(c); <u>In re Gianakas</u>, 112 Bankr. 737, 740 (W.D.Pa.), <i>aff'd,</i> 917 F.2d 759 (3d Cir. 1990).  For the reasons set forth below, the Appellants submit that leave to appeal, if even necessary, is warranted, and that the Court may grant leave to appeal the Order.

5

3.    **Leave to appeal the Order is warranted; therefore, the Motion should be denied.**

As the Third Circuit has consistently held, "considerations unique to bankruptcy proceedings require courts to adopt a pragmatic approach in determining the finality of bankruptcy orders." In re Marvel Entertainment Group, 209 B.R. at 835, citing Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 36-37 (3d Cir. 1993). In fact, in considering the finality of a district court's ruling regarding the application of the automatic stay, the Third Circuit, in United States v. Nicolet, Inc., 857 F.2d 202 (3d Cir. 1988), held that such a ruling was a final, appealable order. "In so holding, the court relied on factors such as the unique characteristics of the automatic stay, the purely legal nature of the district court's decision, and the fact that the decision at issue required no further work by the district court." Id. at 206, citing Lomas Financial Corp. v. Northern Trust Co., 932 F.2d 147, 151 n.2 (2d Cir. 1991) (observing that a decision that the automatic stay applies is final as to that issue and is appealable).

Under section 1292(b), leave to file an appeal of an interlocutory order is granted when:

> [T]he order at issue (1) "involves a controlling question of law" upon which there is (2) "substantial ground for difference of opinion" and (3) when "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Beckley Coal Mining Co. v. United Mine Workers of Am., 98 B.R. 690, 692 (D. Del. 1988) (quoting 28 U.S.C. § 1292(b)). Each of these requirements is met here.

a.    The Order Involves a Controlling Question of Law.

The definition of a "controlling" question of law encompasses "at the very least every order which, if erroneous, would be reversible error on final appeal." Id. (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 855 (3d Cir.), cert. denied, 419 U.S. 885 (1974)). In this case, the Order sought to be appealed from permanently enjoins the Appellants from transferring title to the Firestone Property, and also makes the affirmative finding, without having afforded the

6

Appellants with the opportunity to answer the allegations in the Complaint, conduct discovery or otherwise benefit from guarantees of both due process and a hearing, that the Appellants violated the automatic stay. If the Appellants are successful on appeal in arguing that the Bankruptcy Court had no basis from the record before it to make the findings and rulings encompassed by the Order, the result would be that this Court would find that the entry of the Order was erroneous, and its entry would be reversed. The issues presented in the appeal address more than mere harmless error; the rulings appealed from have a direct effect on the proceedings in the Bankruptcy Court and in the California court, where the parties' rights, if any, under the Agreement are currently being litigated. As a result, the legal issues to be presented on this appeal are controlling.

        b.    <u>There Is Substantial Ground for Disagreement With the Order.</u>

There is also "substantial ground" for disagreement with the Order. Indeed, the Order is contrary to the virtually unanimous authority addressing the requisite notice required for a court to grant summary judgment <u>sua sponte</u> on the merits of a plaintiff's complaint. The Appellants submit that, in actuality, there is no substantial ground for difference of opinion as to the validity of the Order; the authority on both issues clearly indicates that the Order was improper, making it abundantly clear that, even if interlocutory, the appeal should be heard. <u>See</u> <u>Marvel Enter. Grp.</u>, 209 B.R. 832, 837 (D. Del. 1997) ("although the application of this criterion makes sense where a district court must determine whether to certify a decision for appeal to a court of appeals, it cannot apply where, as here, a district court believes that there is no substantial ground for difference of opinion because the bankruptcy court's decision is contrary to well-established law").

                    

i.    *Notice of a Preliminary Injunction*

Rule 65(a) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7065 of the Federal Rules of Bankruptcy Procedure, states that "No preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The Supreme Court has held that a party responding to a request for a preliminary injunction is entitled to "a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 432 n. 7, 94 S. Ct. 1113, 1121 n.7, 39 L. Ed. 2d 435 (1974), citing Sims v. Greene, 161 F.2d 87 (3d Cir. 1947). Nonetheless, the Bankruptcy Court issued the Order, which prohibits the Appellants from transferring title to the Firestone Property, after two days' notice and a hearing on the Emergency Motion.

The Appellants were served with the Emergency Motion on June 28, 2005. The hearing on the Emergency Motion was held on June 30, 2005. The Appellants concede that the sufficiency of notice is a matter left to the discretion of the Court. See Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997) ("We question, however, the usefulness of a rigid application of Rule 6(d)'s five day formal notice requirement to motions seeking preliminary injunctions. The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits"). Indeed, based upon the Emergency Motion, the Appellants appeared before the Bankruptcy Court prepared to address the issues of potential harm to the Debtor, and did not have an opportunity to present briefing or argument on the legal issue of whether the actions of the Appellants constituted violations of the automatic stay.[2] However, the Appellants suggest

---

[2] The Debtor, in its Opening Brief in support of the Motion, makes the factually unsupported and irresponsible statement that "Defendants, by their own admission, clearly violated the automatic stay." Brief, at p. 9. The Appellants in no way admit, nor have they ever admitted, that their actions violated the automatic stay.

8

that the Bankruptcy Court's Order, particularly considering that the Order included wholly unsupported conclusions that the Appellants violated the automatic stay, constituted an abuse of its discretion, considering that such rulings were made on two days' notice.

        ii.    *Notice of the Bankruptcy Court's Rulings on the Merits of the Complaint*

While the Appellants concede that this Court would need to evaluate the Bankruptcy Court's ruling that the Debtor provided the Appellants with sufficient notice for a preliminary injunction to issue, the Bankruptcy Court's ruling in the Order that the Appellants violated the automatic stay, which reaches the heart of each of the counts of the Debtor's Complaint is certainly inappropriate.

As the Third Circuit has noted, "[b]ecause the scope and procedural posture of a hearing for a preliminary injunction is significantly different from a trial on the merits, the Supreme Court has held that 'it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.' According to the Court, a district court should not consolidate a hearing for preliminary relief with a trial on the merits unless the court has given both parties 'clear and unambiguous notice' of its intent to do so."  Anderson v. Davila, 125 F.3d 148, 157 (3d Cir. 1997), citing University of Texas v. Camenisch, 451 U.S. 390, 395 (1991).  The Appellants certainly had no notice that the Bankruptcy Court intended to rule on the merits of the Debtor's Complaint, to which the Appellants had no opportunity to file an answer, conduct discovery or brief the myriad legal issues on the underlying merits of the stay violation claim.  The only matter scheduled for hearing on June 30 was the Emergency Motion.

The Third Circuit Court of Appeals has stated that there are two requirements for granting summary judgment sua sponte: (1) the losing party must be on notice that the court is contemplating granting summary judgment against it, and (2) the losing party must have adequate time to marshal its evidence to show that there is a genuine issue of material fact.

Howard Johnson Int'l v. Cupola Enters., LLC, Case No. 03-4458, 2004 U.S. App. LEXIS 26217,
at *9 (3d Cir. December 15, 2004).[3]  Notice in the context of a sua sponte grant of summary
judgment "means that the losing party had reason to believe the court might reach the issue and
received a fair opportunity to put its best foot forward." Rijos v. Vizcaya (In re Rijos), 263 B.R.
382, 391-92 (B.A.P. 1st Cir. 2001).  Sufficient notice requires "notice reasonably calculated,
under all the circumstances, to apprise the interested parties of the pendency of the action...."
Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  If there is any doubt as
to whether the losing party in a sua sponte grant of summary judgment had sufficient notice, the
doubt should be resolved in favor of the losing party. Rijos, 263 B.R. at 392.

The United States Supreme Court and every Circuit Court of Appeals has held that a
court may not issue a sua sponte grant of summary judgment unless the losing party has received
sufficient notice.[4]  At the time of the TRO Hearing, the Appellants had not even been served
with a copy of the Complaint alleging a violation of the automatic stay, yet the Bankruptcy Court
ruled that there was such a violation.  Given the universal acceptance of the notice requirement
for sua sponte grants of summary judgment, the Order was inappropriate as the Appellants were
afforded no notice that the merits of the Complaint were to be considered at the TRO Hearing.

---

[3] A copy of the Circuit Court's ruling is annexed hereto as Exhibit A.

[4] See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Rijos, 263 B.R. 382; Garcia v. Miller,
C.A. No. 99-0009, 1999 U.S. App. LEXIS 32429 (2d Cir. Dec. 10, 1999); Howard Johnson, 117
Fed. Appx. 820; Home Shopping Network, Inc. v. Happy Mind, Inc., C.A. No. 90-2418, 1991
U.S. App. LEXIS 8285 (4th Cir. May 3, 1991); Arkwright-Boston Mfrs. Mutual Ins. Co. v. Aries
Marine Corp., 932 F.2d 442 (5th Cir. 1991); Heller v. Vallelonga, C.A. No. 92-4072, 1993 U.S.
App. LEXIS 34094 (6th Cir. Dec. 21, 1993); Simpson v. Merchs. Recovery Bureau, Inc., 171
F.3d 546 (7th Cir. 1999); Lerohl v. Friends of Minnesota Sinfonia, 322 F.3d 486 (8th Cir. 2003);
Oluwa v. Gomez, 133 F.3d 1237 (9th Cir. 1998); Graham v. City of Oklahoma City, 859 F.2d
142 (10th Cir. 1988); EPL, Inc. v. USA Fed. Credit Union, 173 F.3d 1356 (11th Cir. 1999);
Colvin v. Nat'l Auto. Parts Ass'n, C.A. No. 95-1461, 1996 U.S. App. LEXIS 11680 (Fed. Cir.
May 22, 1996).

c.   Resolving the Appeal Will Materially Advance the Ultimate Termination of the Litigation.

Finally, the Order meets the third prerequisite for appeal from an interlocutory order: granting leave to appeal will "materially advance the ultimate termination of this litigation." The Debtor suggests that "the adversary proceeding has not even left the starting blocks yet." To the contrary: the Bankruptcy Court allowed the Debtor a "false start" in the adversary proceeding that would taint any further hearings in that proceeding. Rectifying the errors in the Order would preserve the Appellants' right to respond to, and have a full evidentiary hearing on, all counts of the Complaint improperly ruled upon in the Order. Any further proceedings in the Bankruptcy Court premised upon the Order will be tainted, as the rulings encompassed in the Order affect each count of the Debtor's Complaint.

The Debtor has only recently (since the filing of this appeal) served the Complaint on the Appellants, the counts of which are: (i and ii) violation of the automatic stay (upon which the Court has seemingly already ruled against the Appellants); (iii) declaratory relief as to the Debtor's rights to the Firestone Property (upon which the Bankruptcy Court has already seemingly ruled by determining that the transfers violated the automatic stay and were void ab initio); (iv) breach of contract (upon which the Bankruptcy Court has already seemingly ruled to the extent that it has determined there is a valid contract to have been breached); (v, vi, vii, and viii) fraudulent conveyance (upon which the Bankruptcy Court has already seemingly ruled to the extent that the Appellants have an obligation to the Debtor, thereby giving rise to the Debtor's standing to allege such a count); (ix) tortious interference with contract (upon which the Bankruptcy Court has already seemingly ruled to the extent that it has determined there is a valid contract to have been interfered with); and (x) injunctive relief (on which the Bankruptcy Court has already ruled directly).

11

However, now that the Complaint has been served, the Appellants are required to file a response to each of these counts. This will be an exercise in futility, however, as the rulings embodied in the Order will seemingly be res judicata or the law of the case. The Debtor will argue that the Bankruptcy Court's previous rulings are law of the case and the Appellants will not have a full and fair opportunity to argue the merits of its defenses to the claimsand allegations in the Complaint. The Bankruptcy Court will likely be bound by its previous rulings, and after issuing a judgment against the Appellants, a further appeal will ensue.

Since the Order seemingly effectively determined elements of each count of the Complaint, it makes no sense to delay an adjudication on the merits of the appeal. "To delay a decision on this critical ruling would allow the Chapter 11 proceeding to continue only to have it undone at its finality if the order was incorrect. In these circumstances, we will treat the orders of the bankruptcy judge and the district court as final and assume jurisdiction over the merits." Commerce Bank v. Mountain View Village, 5 F.3d 34, 37 (3d Cir. 1993).

The Debtor suggests that it is possible the adversary proceeding could be rendered moot by other issues in the bankruptcy. However, this is a red herring, as it does not discuss the effect of this appeal on resolving this adversary proceeding. If anything, the Debtor's argument suggests that the entire adversary proceeding was not ripe for adjudication, and that there was in fact no impending irreparable harm threatened which is a required predicate to the grant of any injunctive relief. The Appellants submit that resolving the propriety of the Order would hasten the termination of all of the litigation in the adversary proceeding, particularly to the extent that the Debtor has or will rely upon the language of the Order as law of the case in the various litigation matters pending. See, e.g., Order, at ¶2 ("the automatic stay provisions of section 362 of the Bankruptcy Code already provide the Debtor with the relief sought by the Emergency

Motion,"), ¶ 3-4 ("the transfers of title to the Property…constitute clear violations of the automatic stay"), which effectively rules on matters – whether the Agreement is enforceable and therefore can be considered property of the estate – which are currently pending in California).

Considering whether the appeal would advance the resolution of the entire bankruptcy case, however, is not the relevant inquiry. Rather, this Court should determine whether hearing the appeal would ultimately advance the resolution of the adversary proceeding. To the extent that the Bankruptcy Court improperly ruled upon various core issues raised in the Complaint, this appeal would likely remedy those due process deficiencies and give the parties a full opportunity to litigate the matters before the Bankruptcy Court.

Inasmuch as an immediate appeal may avoid unnecessary trial time and litigation expense, and would conserve judicial resources, both at the Bankruptcy Court level and at the appellate court level, an appeal from the Order at this time is in the best interests of the parties. See Katz v. Carte Blanche Corp., 496 F.2d 747, 756 (3d Cir. 1974) (explaining that policy behind appeal from interlocutory orders is to avoid possibly wasted trial time and litigation expense); Max Daetwyler Corp. v. Meyer, 575 F. Supp. 280, 283 (E.D. Pa. 1983) (granting leave to appeal because successful appeal would resolve matter before trial without cost of time and resources and finding that the delay inherent in the appeal and potential for multiple appeals is not so great as to outweigh the potential cost to the parties if the matter proceeds to trial and is later dismissed by the appellate court).

13

## CONCLUSION

WHEREFORE, the Appellants respectfully request that the Court deny the

Debtor's Motion to Dismiss, and either (i) hear the Appellants' appeal as an appeal as of right or

(ii) consider the Appellants' Notice of Appeal as a Motion for Leave to Appeal, exercise its

discretion to hear the appeal, and grant such other and further relief as is just and proper.


Dated: Wilmington, Delaware
      November 18, 2005       YOUNG CONAWAY STARGATT & TAYLOR, LLP


                              Joseph A. Malfitano (No. 4020)
                              Curtis J. Crowther (No. 3238)
                              Sean T. Greecher (No. 4484)
                              The Brandywine Building, 17th Floor
                              1000 West Street, P.O. Box 391
                              Wilmington, Delaware 19899-0391
                              Phone: (302) 571-6600


                              Daniel H. Slate
                              HUGHES HUBBARD & REED LLP
                              350 South Grand Avenue
                              Los Angeles, California 90071-3442


                              Attorneys for Appellants

14

# **EXHIBIT A**

**HOWARD JOHNSON INTL, a Delaware Corporation v. CUPOLA
ENTERPRISES, LLC, a Louisiana Limited Liability Company; ROBERT
DUPREE, an individual ROBERT DUPREE, an individual, Appellant**

**No. 03-4458**

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

*117 Fed. Appx. 820; 2004 U.S. App. LEXIS 26217*

**November 2, 2004, Submitted Under Third Circuit LAR 34.1(a)
December 15, 2004, Opinion Filed**

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT
COURT OF APPEALS MAY LIMIT CITATION TO
UNPUBLISHED OPINIONS. PLEASE REFER TO
THE RULES OF THE UNITED STATES COURT OF
APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF
NEW JERSEY D.C. Civil No. 01-cv-01205 District
Judge: The Honorable Dennis M. Cavanaugh.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff franchisor sued
defendant guarantor for breach of a guaranty. On the day
of trial, plaintiff filed a motion in limine, seeking to pre-
clude defendant from offering any evidence at trial in
support of his counterclaims or defenses. The U.S. Dis-
trict Court for the District of New Jersey adjourned the
trial and gave defendant time to respond. A year later,
the court granted summary judgment to plaintiff. Defen-
dant appealed.

**OVERVIEW:** Defendant claimed that it was improper
for the trial court to grant summary judgment when all
that was before it was a motion in limine. Notably, de-
fendant did not argue that the trial court erred on the
merits or the procedure. Defendant also appealed the
denial of his application to amend his answer to the
complaint. The issue in the context of sua sponte sum-
mary judgment was whether defendant was given notice
that summary judgment was being contemplated by the
court. Defendant was explicitly put on notice that the
motion was potentially dispositive, and he was provided
adequate time to draft a response. Both of the key re-
quirements for allowing a district court to sua sponte
grant summary judgment were met. On the eve of trial,
defendant advised his counsel that he did not sign the
guaranty or, at the very least, did not remember signing

it. The trial court found this to be "disingenuous." Be-
cause defendant made no motion, oral or written, to
amend his answer or to withdraw from his many admis-
sions that he had signed the guaranty, there was no con-
comitant ruling of the trial court for appellate review.

**OUTCOME:** The court affirmed the judgment of the
district court.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards of
Review*
[HN1] A circuit court exercises plenary review over a
district court's grant of summary judgment. A district
court may not grant summary judgment sua sponte
unless the court gives notice and an opportunity to op-
pose summary judgment.

*Civil Procedure > Summary Judgment > Summary
Judgment Standard*
[HN2] It has long been established that if certain precon-
ditions are present, district courts are entitled to grant
summary judgment sua sponte.

*Civil Procedure > Summary Judgment > Summary
Judgment Standard*
*Civil Procedure > Trials > Motions In Limine*
[HN3] A court cannot grant summary judgment pursuant
to a motion in limine without the presence of procedural
safeguards.

*Civil Procedure > Summary Judgment > Summary
Judgment Standard*
[HN4] A district court is not permitted to sua sponte
grant summary judgment unless two key requirements
are satisfied. First, the non-moving party must be on no-
tice that the court is contemplating granting summary
judgment against it. Second, the non-moving party must
have adequate time to marshal its evidence to show that
there is a genuine issue of material fact.

117 Fed. Appx. 820, *; 2004 U.S. App. LEXIS 26217, **

**COUNSEL:** For HOWARD JOHNSON INTL, a Delware Corporation, Appellee : Dennis R. LaFiura, Paul J. Halasz, Pitney Hardin, Morristown, NJ.

For ROBERT DUPREE, an individual, Appellant: Philip Rosenbach, Berman Rosenbach, Morrristown, NJ.

**JUDGES:** Before: ALITO, BARRY, and FUENTES, Circuit Judges.

**OPINIONBY:** Barry

**OPINION:**

[*820] OPINION

BARRY, Circuit Judge

Robert Dupre n1 appeals, first, the District Court's grant of summary judgment in favor of Howard Johnson International, Inc. ("HJI"), claiming that it was improper [*821] for the Court to grant summary judgment when all that was before it was a motion *in limine*. Notably, Dupre argues only the labeling of the result the Court reached and not that it erred on the merits or that the procedure the Court followed en route to that result was wrong. Second, Dupre appeals the District Court's putative denial of his application to amend his [**2] Answer to the Complaint. The District Court had jurisdiction pursuant to *28 U.S.C. § 1332*. We have jurisdiction pursuant to *28 U.S.C. § 1291*. We will affirm.

---

n1 Appellant's last name is variously spelled "Dupre" and "Dupree." We will use the spelling he uses.

---

**I.**

Because we write solely for the benefit of the parties, we recount only those facts that are relevant to the issues before us. HJI commenced this case on March 12, 2001 against defendants' Cupola Enterprises, LLC ("Cupola") and Dupre, seeking damages arising out of defendants' alleged breach of a franchise agreement and Guaranty. The claims against Cupola were stayed as a result of its bankruptcy. The case continued against Dupre as Cupola's guarantor.

Discovery having closed, a non-jury trial was to begin on October 30, 2002. On the day of the trial, however, and following argument before the District Court, the Court adjourned the trial in order to consider the issues raised in a motion *in limine* [**3] n2 filed by HJI. That motion argued that, as a matter of law: (1) the parol evidence rule barred Dupre from offering proofs in support of his Counterclaim and affirmative defenses that contradicted the written terms of the License Agreement; (2) Dupre had no standing to assert any claims that may be personal to Cupola; and (3) Dupre's theories of damages were legally unsustainable. In essence, this motion sought to preclude Dupre from offering at trial any evidence in support of his Counterclaim and defenses. The motion was, it surely appears, a summary judgment motion labeled as a motion *in limine*. See n.2, *supra*.

---

n2 At the final pretrial conference, the Magistrate Judge stated that while summary judgment motions could no longer be filed, motions *in limine* could be brought before the District Court on the day trial was to commence.

---

HJI's motion was characterized by all at the argument, including Dupre's counsel, as "dispositive." The District Court told Dupre that he would "have as much time as [**4] is necessary . . . to appropriately respond." After discussing the briefing schedule, Dupre was given twelve days within which to file a response. The District Court made it quite clear that whether there would be a trial was dependent on the resolution of the motion. Nearly a year later, on October 15, 2003, the District Court entered summary judgment in favor of HJI.

Also, on what was to be the first day of trial, the District Court did not permit Dupre to make an issue out of what had not theretofore been an issue, *i.e.* whether Dupre signed the Guaranty. Dupre's counsel argued that he had not met his client until the day before trial. During that meeting, Dupre and counsel reviewed documents, and Dupre notified counsel, for the first time, that it was not his signature on the Guaranty and that he did not remember signing the Guaranty. The District Court found this "flip flop" on the day of trial "incredible" because Dupre had admitted that he was the guarantor in his Answer to the Complaint, in his Counterclaim, and in an affidavit that was attached to a motion to transfer, and had at no time throughout the course of the litigation attempted to disavow that admission. Moreover, [**5] at the final pre-trial conference and [*822] in the Final Pretrial Order it was stipulated that he had signed the Guaranty.

**II.**

*A. Summary Judgment*

[HN1] We exercise plenary review over the District Court's grant of summary judgment. *Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 381 (3d Cir. 2004)*.

[HN2] It has long been established that if certain preconditions are present, district courts are entitled to

117 Fed. Appx. 820, *; 2004 U.S. App. LEXIS 26217, **

grant summary judgment *sua sponte. See Celotex Corp. v. Catrett, 477 U.S. 317, 326, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)* ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence."). In *Otis Elevator Co. v. George Washington Hotel Corp., 27 F.3d 903 (3d Cir.1994),* we held that a district court may not grant summary judgment *sua sponte* unless the court gives notice and an opportunity to oppose summary judgment. *See also Davis Elliott Intern. v. Pan American Container, 705 F.2d 705, 707-08 (3d Cir.1983)* ('"because the procedure of *Rule 56* requiring [**6] an opportunity to present pertinent material, which presumes notice to the party so that he may take advantage of the opportunity, was not followed, the entry of judgment must be reversed'").

The threshold issue in the context of *sua sponte* summary judgment is, therefore, whether the party was given notice that summary judgment is being contemplated by the court. *Gibson v. Mayor and Council of the City of Wilmington, 355 F.3d 215, 222-23 (3d Cir. 2004).* If so, the next issue for consideration is whether the non-moving party had adequate time to gather the evidence necessary to oppose the motion and presented such evidence to the court. *Id. at 223.*

Dupre argues that it was improper for the District Court to grant summary judgment when the motion before it was a motion *in limine.* He cites *Bradley v. Pittsburgh Board of Education, 913 F.2d 1064 (3d Cir. 1990),* in support of his argument and, indeed, in *Bradley* we found that the District Court had impermissibly granted summary judgment on the basis of a motion *in limine. Id. at 1070.* Dupre thus extrapolates from *Bradley* that the Rules of Civil Procedure [**7] always prohibit a court from granting summary judgment when only a motion *in limine* has been filed.

*Bradley* does not go that far. In *Bradley,* we reversed the grant of summary judgment because there was no evidence that the non-moving party had been put on notice. We also observed that the non-moving party had reasonably assumed that the case would continue to trial because neither party, nor the judge, suggested that the trial would not proceed. In addition, because of the absence of a formal motion for summary judgment, the non-moving party was "under no formal compulsion to marshall all of the evidence in support of his claims." *Bradley, 913 F.2d at 1069-70.* We, therefore, held that [HN3] a court cannot grant summary judgment pursuant to a motion *in limine* without the presence of procedural safeguards. *Id. at 1070.*

This case is distinguishable from *Bradley* for two reasons. First, Dupre knew that HJI's motion was potentially dispositive; indeed, his counsel said so at the hearing. When counsel claimed that his client might not understand what had transpired just moments before, the District Court succinctly summarized: "There's an [**8] application made that in effect is asking this Court to strike your defenses, and in [*823] so doing, unless there is some other issue that I'm not aware of, enter judgment in favor of the Plaintiff." Pa 51. The District Court then concluded the colloquy by stating that whether there would be a trial would depend on the resolution of this motion.

Although the District Court did not at that time state *in haec verba* that what was before it was a motion for summary judgment, Dupre was explicitly put on notice that the motion was potentially dispositive, and was given ample reason to believe that the District Court might enter judgment for HJI. He, therefore, was cognizant of the need to "marshall all of his evidence" in support of his claims.

Second, unlike the non-moving party in *Bradley,* Dupre was provided adequate time to draft a response. After the District Court expressed a desire to have more briefing on the issues raised in the motion, it remarked, "My concern is the fairness to [Dupre's counsel, to have him be handed this at this time, without his opportunity to do what he has to do to respond to the legal arguments." Counsel then suggested that he could have a response drafted [**9] by the next day. The Court rejected this, stating "I'm not looking to back you to the wall. I mean I'll give you time to do what you want . . . I'll give you as much time as is necessary for you to appropriately respond." Dupre was then given eight days to respond - two shy of the ten required by *Rules 56(c)* and *6(a).* While he may have been shortchanged two days, he never brought this error to the District Court's attention, and he has not asserted it here. In the absence of protest, we will assume that this abbreviated schedule afforded Dupre all the time that he needed.

In sum, we do not permit [HN4] a district court to *sua sponte* grant summary judgment unless two key requirements are satisfied. First, the non-moving party must be on notice that the court is contemplating granting summary judgment against it. Second, the non-moving party must have adequate time to marshal its evidence to show that there is a genuine issue of material fact. Both requirements were satisfied here.

B. *Denial of Dupre's Application to "Amend His Answer to Deny Execution of the Guaranty"* n3

N3 In his brief on appeal, Dupre inconsistently characterizes the error at issue as being the denial of his application to amend his Answer, to amend the Final Pretrial Order, and to amend "all prior pleadings." Because no application was made, we need not determine to which document or documents he refers. Appellee, for its part, characterizes the application as a request by Dupre "to retract his admission concerning execution of the Guaranty." Appellee's Br. at 22. Again, it is far from clear that any such request was made.

[**10]

On the eve of trial, Dupre advised his counsel that he did not sign the Guaranty or, at the very least, did not remember signing it, and on the day set for trial, the District Court was so advised. The Court found it to be "extremely disingenuous, that at this day, the day of trial, that now, for the first time, the aspect that's at the heart of the entire case, for the first time, your client claims that he didn't sign it and didn't guarantee, when throughout the entire history of the case he's acknowledged that he did . . . I'm not buying this." Pa 33-35.

Dupre appeals the District Court's supposed denial of his application to amend his Answer. We say "sup-

posed" because nowhere in the record is there any explicit application to permit him to do so, much less to retract or modify his repeated admissions that he had signed the Guaranty. Indeed, counsel, specifically disavowing any request to adjourn the trial or take [*824] discovery, simply wanted to know from HJI's counsel, present in the courtroom, "What is Howard Johnson's position? How did they get the guarantee? Did it come by mail? Did it come by Federal Express? Did somebody sit with Mr. Dupree when he signed the guarantee? And [**11] who is that? Who is the witness?" (Pa. 38-39).

Because Dupre made no motion, oral or written, to amend his Answer to the Complaint or to withdraw from his many admissions that he had signed the Guaranty, there is no concomitant ruling of the District Court for us to review. And, while the Court did not accede to the request of Dupre's counsel that HJI's counsel respond to counsel's inquiries concerning the circumstances surrounding the execution of the Guaranty, Dupre does not here challenge that refusal.

**III.**

For the foregoing reasons, we will affirm the judgment of the District Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INFRASTRUCTURE SERVICE | ) Bankruptcy Case No. 04-12037 (PJW) |
| COMPANY, LLC | ) |
| | ) |
| Debtor. | ) |
| | ) |

| | |
|---|---|
| John F. Firestone, Hub Management, Inc. | ) |
| John F. Firestone Master Limited Partnership and | ) |
| HMI Group, Inc., | ) C.A. No. 05-579 (GMS) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) Adv. No. 05-51879 (PJW) |
| | ) |
| INFRASTRUCTURE SERVICE COMPANY, | ) |
| LLC, | ) |
| | ) |
| | ) |
| | ) |
| Appellee. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on **November 18, 2005**, I caused a copy of the **Appellants'**

**Answering Brief With Respect to Appellee's Motion to Dismiss Appeal** to be served by hand-

delivery on the following counsel of record:

| | |
|---|---|
| United States Trustee | Michael D. DeBaecke, Esquire |
| Attn: William Harrington, Esquire | Elio Battista, Jr., Esquire |
| Office of the United States Trustee | Steven L. Caponi, Esquire |
| 844 King Street, Suite 2313 | Blank Rome Comisky & McCauley, LLP |
| Lock Box 35 | 1201 Market Street, Suite 800 |
| Wilmington, DE 19801 | Wilmington, DE 19801-4226 |
| *Hand Delivery* | *Hand Delivery* |

I further certify that on **November 18, 2005**, I served the **Appellants' Answering Brief with Respect to Appellee's Motion to Dismiss Appeal** on the following non-registered participants in the manner indicated below:

Penelope Parmes, Esquire
Martin W. Taylor, Esquire
Matthew Grimshaw, Esquire
Rutan & Tucker, LLP
611 Anton Bouelvard, 14th Floor
Costa Mesa, CA 92626
*First Class Mail*

Jon Lieberg, Esquire
Jon H. Lieberg, A.P.L.C.
27349 Jefferson Avenue, Suite 213
Temecula, CA 92590
*First Class Mail*

Daniel H. Slate, Esquire
Deborah Lintz, Esquire
Hughes Hubbard & Reed, LLP
350 South Grand Avenue, 36th Floor
Los Angeles, CA 90071-3442
*First Class Mail*

Stephen R. Thames, Esquire
Allen Matkins Leck Gamble & Mallory LLP
1900 Main Street, 5th Floor
Irvine, CA 92614-7321
*First Class Mail*

Dated: Wilmington, Delaware
        November 18, 2005

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sean T. Greecher (No. 4484)
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: (302) 571-6600

*Attorneys for Defendants/Appellants John F. Firestone,
HUB Management, Inc., John Firestone Master Limited
Partnership, and HMI Group, Inc.*